ESTATE AND GUARDIANSHIP OF KATHLEEN PLUMMER, JOANNE PLUMMER AND ELLOISE ELAINE PLUMMER, MINORS. MRS. EVERETT PLUMMER, CONTESTANT AND APPELLANT, *v.* MARGARET F. JOHNSON, GUARDIAN AND RESPONDENT.

No. 9988.
Submitted February 29, 1960. Decided April 1, 1960.
Rehearing denied April 21, 1960.
350 Pac. (2d) 846.

Gene Huntley, Baker, for appellant.

Hansen, Jones & Culver, Baker, Russell L. Culver argued orally, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order refusing to remove Margaret

F. Johnson as guardian of her three minor children upon the application of the children's paternal grandmother.

Margaret F. Johnson, hereinafter referred to as the respondent, was appointed guardian of her three minor daughters, on August 3, 1951, and has been guardian since the date of her appointment. She was married in 1943 to Elliott Plummer. The three minor daughters were born to the marriage one of them after the death of Elliott Plummer. Elliott died intestate in 1950. Respondent, the widow, was appointed administratrix of the estate on August 8, 1950. Prior to his death, Elliott Plummer and the respondent owned one parcel of farm and range land as joint tenants. The joint tenancy was terminated with respondent becoming the sole owner. In the same farm operation, other parcels were owned in common. Upon Elliott's intestate death, respondent became a one-third owner and the minor children two-third owners in real and personal property, including livestock, a livestock brand, farm machinery, an auto, and a few shares of corporate stock. It appears that in the administration of the estate, some of the assets were sold and reduced to cash, other assets were distributed in kind and undivided.

Respondent was appointed guardian and the order provided for a bond. Shortly after being appointed as guardian, the respondent moved with her minor children to the State of Washington where they have continued to reside. She has since remarried. The real property was leased on shares to a former brother-in-law of respondent, a son of the appellant.

The appellant here is the paternal grandmother of the minors, and the former mother-in-law of the respondent. Her son was the lessee from the respondent until 1954. From 1955 through 1957, a daughter and son-in-law of the appellant were lessees. Shares of the sale of cattle and grain were made, it might be said within the family, to respondent for some of her individually owned share and for some of the guardianship share.

Respondent after moving to Washington made no accounting

in the guardianship matter until September 24, 1956. Neither had she obtained court permission to lease the lands as described above. Admittedly she had not segregated the assets and funds. Typically, as a widowed mother might, she went on with her life treating the property and its income as her own and using the income to support herself and children. She did buy bonds for each of the children with herself as a joint owner. She used some of the funds to pay a mortgage existing on the property at the time of her husband's death.

. Finally, a disagreement of some sort arose between respondent and her former "in-laws". After the filing of her first account in September 1956, by the respondent, the appellant filed objections to the account on October 10, 1956.

Subsequently, on April 10, 1957, the appellant here filed a petition in the same guardianship matter seeking removal of the respondent mother as guardian of the estate. On May 8, 1957, an order to show cause issued and on June 12, 1957, a hearing was had, and again on September 19, 1957, a further hearing was had.

The district court made findings and conclusions, so far as pertinent to this appeal, as follows:

"That sometime in the early part of the month of November, 1950, the said Margaret F. Plummer, together with her three girls, being the three minors named herein, moved from the State of Montana, to Seattle, Washington, where they have since then lived. That the said Guardian as Mother of said children continued to receive income from the property owned by herself and said minors situated in Fallon County, Montana, which income was the only source from which said Guardian and minors had to maintain an existence.

"That said Guardian did from the time of her appointment until the fall of 1957, lease her property and that of the minors to certain relatives of her deceased husband, namely, Charles A. Plummer, brother, and Ira and Gloria Smeltzer, the latter being a sister of the deceased Elliott Plummer. That income from the

property was transmitted to the Guardian at Seattle, Washington, and used by her in good faith for maintenance of herself and said minors. That the first accounting made to the Court by said Guardian was on or about September 24, 1956, to which objections were filed by Mrs. Everett Plummer.

"That the Guardian has filed an inventory, setting forth all of the items set forth herein, and that the Guardian has not mismanaged the estate of said minors nor embezzled from the same, but has in absolute good faith, used the income therefrom to maintain a high standard of living for said minors. * * *

"Conclusions of Law

"That the Guardian, Margaret F. Plummer, has at all times acted as such in good faith for the best interests of the minors, Kathleen Plummer, Joanne Plummer and Elloise Elaine Plummer and as removal of herself as Guardian is discretionary with the Court, the said Margaret F. Johnson, formerly Margaret F. Plummer, should not be removed as guardian.

"That the Petitioner, Mrs. Everett Plummer, has failed in her burden of proving the allegations of her Petition for removal of the said Guardian, and that the same should be denied.

"That the said Margaret F. Johnson, formerly Margaret F. Plummer, should present a more detailed accounting to the Court of her activities as such Guardian.

"That the Order made herein by this Court on May 8, 1957, suspending the powers of said Guardian, Margaret F. Johnson, should be by the Court revoked."

The appellant specifies some twenty-three errors, then groups them into questions as follows:

1. It was mandatory for the trial court, after finding the respondent had removed from the State of Montana, to remove her as guardian.

2. The trial court should have removed the respondent as guardian when she failed to file any report or account of her activities as guardian for a period of more than five (5) years,

and failed to file an inventory and appraisement of the estate of her wards for a period of nearly six (6) years.

3. The trial court should have removed the guardian for continuous abuse and neglect of her trust and failure to perform her duties.

Appellant also lists a fourth question which we do not consider meritorious in any sense.

As to the first question, R.C.M. 1947, § 91-4522, provides:

"A guardian may be removed by the district court for any of the following causes:

"1. For abuse of his trust.

"2. For continued failure to perform his duties.

"3. For incapacity to perform his duties.

"4. For gross immorality.

"5. For having an interest adverse to the faithful performance of his duties.

"6. For removal from the state.

"7. In the case of the guardian of the property, for insolvency.

"8. When it is no longer proper that the ward should be under guardianship."

The trial court as shown above found that the guardian and her wards moved from Montana to Washington. The appellant argues that the word "may" as used in the statute means "must" and that the trial court did not have discretion in the matter; and that it became mandatory for the trial court to remove the guardian because she had removed from the state under subdivision 6 above.

In this connection the appellant relies on Bascom v. Carpenter, 126 Mont. 129, 246 P.2d 223, where this court held that a father must be notified of a petition for adoption of his children, regardless of the use of the word "may" in the statute providing for notice. Under the factual situation of that case, wholly different than those of the instant case, the rights of the father were clearly apparent. This court quoted with approval

from Simpson v. Winegar, 122 Ore. 297, 258 P. 562, 563, wherein the Oregon Court said: "It is well settled that, where even the word 'may' is used, and the rights of the public or of a third party are affected, the language is mandatory, and must be strictly obeyed." However, the rule does not apply here because the wards' interest has not suffered nor been affected by the mere removal from the state of their mother with whom they live.

This court has not construed the statute involved in this regard heretofore. But, somewhat similar statutes were construed in Nettleton v. State, 13 Ind. 159, wherein the Supreme Court of Indiana said, "We do not mean to say that where a guardian has removed from the county, it would be imperative on the Court below to remove him from his trust; but where the Court below does remove him for that cause, the statute expressly authorizing it, we have no authority to revise the discretion of the Court below, thus exercised." This case has been followed since in that state.

And in 1859 in construing a similar statute, the Supreme Court of Wisconsin held similarly in Cutler v. Howard, 9 Wis. 309.

██ We hold then, that the Legislature intended the word "may" to give discretion to courts to be exercised for the best interests of the guardianship and that in the instant case, the trial court did not abuse that discretion in refusing to remove the guardian simply because of a change of residence.

For the Montana holding as to custody of minor children in a divorce action to a non-resident, see Trudgen v. Trudgen, 134 Mont. 174, 183, 329 P.2d 225.

██ As to questions 2 and 3 of the appellant, the trial court took cognizance of the guardian's technical deficiencies in the management of the estate by stating that the guardian should present a more detailed accounting to the court as to her activities as such guardian. All of the mismanagement complained of by appellant amounted to mere technical deficiencies as we view

the record and as the trial court found, in that it found she acted in complete good faith. A general statement by the author in 25 Am.Jur., 1959 Supp., Guardian and Ward, § 57, p. 10, summarizes our view on this:

"More or less technical mismanagement of the funds or assets of his ward's estate, particularly where it appears that the ward has not suffered thereby, has in a number of cases been held to be insufficient ground for the guardian's removal. Annotation 128 A.L.R. 545."

· Finding that it was within the discretion of the trial court to deny the petition of the appellant, we do not find any abuse · of that discretion. The order is affirmed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR, and THE HONORABLE FRANK I. HASWELL, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur. Mr. Justice Angstman being absent took no part in this appeal.